MILTON PILALAS & Co., Respondent, *v.* FIRST NATIONAL CITY BANK OF NEW YORK, Defendant.

FIRST NATIONAL CITY BANK OF NEW YORK, Interpleading Plaintiff, *v.* CUKOBIRLEK, CUKOROVA PAMUK TARIM SATIS KOOPERATIFLERI BIRLIGI, Interpleaded Defendant-Appellant, et al., Interpleaded Defendant.

First Department, May 21, 1963.

*Lester M. Levin* for appellant.

*Herbert Feiler* of counsel (*Jerome Handler* with him on the brief; *Schur, Handler & Jaffin*, attorneys), for respondent.

Steuer, J. In this action the plaintiff sought to recover a sum deposited in the First National City Bank of New York. The bank interpleaded defendant Cukobirlek, a Turkish co-operative enterprise, and the Banque Centrale de la Republique de Turquie, a Turkish bank. The latter claims no interest in the fund and the action proceeded as one between the plaintiff and the co-operative, hereinafter the defendant. The case was tried before the court without a jury, and judgment was rendered for the plaintiff.

It appears that in September, 1957 American Export Enterprises, Inc. (herein the seller) contracted to sell 1,177 metric tons of baling wire to defendant. The contract is in letter form and confirms prior negotiations by cable and telephone. It provides that defendant is to establish a letter of credit and that delivery is to be made within 90 days after the letter of credit was established. The agreement further provided that the wire was to be shipped on a Turkish vessel to be appointed by the buyer (defendant) within 30 days of notification to the seller of the establishment of the letter of credit. The letter of credit was established on November 29, 1957, and the seller received notification. Due to the delays in establishing the letter of credit, the parties agreed upon a change in the terms as regards delivery. It was then agreed that 250 tons were to be shipped in the second half of December and the balance within 90 days. The balance was to be shipped on Turkish vessels and defendant was to notify the seller when space on such vessels was available.

Thereafter several amendments were made to the shipping terms. These took the form of amendments to the letter of credit, the expiration date of which was also extended. Shipments actually commenced in April, 1958. By July 30, 1958, six shipments had been made, but these comprised less than half of

the order. Of these only two had been made on Turkish vessels and all shipping arrangements had been made by the seller.

The letter of credit, as extended, was about to expire. The seller proposed that if the defendant would extend the delivery time to October 31, 1958, and extend the letter of credit accordingly, the seller would give a performance bond for 10% of the price of the remainder of the shipment, the bond to be reduced pro rata as shipments were made, and provided the Turkish Cargo Lines would insure shipping space. Defendant rejected this offer and required a performance bond without reduction and conditioned upon completion of the entire shipment. On August 4, 1958, the seller agreed to supply such a bond provided the shipment date was extended to November 30, 1958, "to cover whatever risks with shipments Turkvessels New York City." On August 7 defendant agreed. On September 11 the Turkish Cargo Lines informed the seller that its vessel S. S. *Coruh* would be at the dock in New York in the latter half of November, that defendant had requested them to reserve space for the seller's needs, and asked for confirmation of the space required. Defendant similarly notified the seller. On September 11 the seller advised defendant that, as the arrival date of the S. S. *Coruh* was not definite, no performance bond could be given as there was no certainty that a Turkish vessel would be available in November, and again requested a formula for reducing the performance bond. The defendant replied that the S. S. *Coruh* would definitely arrive no later than November 15 and no risk was involved. The seller replied on October 6 that it would prepare to make the shipment and requested elimination of the performance bond. Defendant thereupon wrote that as it had needed permission from the Turkish Government to extend the letter of credit, and as this permission was granted subject to a bond being supplied, defendant was not in a position to waive the bond. At the seller's request, plaintiff thereupon deposited the sum with the bank. The deposit was made pursuant to an escrow agreement, in the same terms that would have applied to a performance bond. This is the deposit that is in suit.

Thereafter, in October, a Turkish vessel, the S. S. *Fethiye,* docked at New York, and the seller made a shipment on it. The balance now due on the order was 378 tons. On November 14 the S. S. *Coruh* was in port. The seller loaded 160 tons, leaving a balance of 218 tons. On November 20 the S. S. *Coruh* sailed. The seller, immediately upon the sailing, cabled defendant to designate another vessel to take the unshipped balance. Defendant answered, what was an undisputed fact, that the S. S. *Coruh*

had been prepared to take the entire balance. There being no further transactions between the parties, plaintiff brought this suit for the recovery of the deposit.

The question presented is whether the seller was released of its obligation to deliver by defendant's failure to supply a vessel after the S. S. *Coruh* sailed on November 20. It is elementary that where a buyer is required to give shipping terms and fails to do so, the seller is excused from delivery (*Jungmann & Co.* v. *Atterbury Bros.*, 249 N. Y. 119). We do not regard the facts here as presenting such a situation. The correspondence above outlined indicates clearly that the seller sought an amendment of its obligation to deliver by which it was to receive additional time in return for a guarantee of performance. On further consideration it desired to retract or limit the guarantee because of the risk of inability to perform due to causes beyond its control, namely, the absence of shipping accommodations. It yielded upon a representation that this risk would be obviated. It was obviated. All shipping instructions and accommodations were provided.

The seller further claims that it had until November 30 to perform and the failure of the defendant to have a vessel available up till that date excused its performance, and it is not in default. This is not the sense of the agreement and is plainly not what was contemplated. The presence of a Turkish vessel prepared to take on the shipment was not a daily occurrence, and clearly the seller so understood. If it be assumed that defendant undertook to supply a vessel, it was clearly not contemplated that it must be supplied at the last moment at which shipment could be made according to the terms of the letter of credit. The seller had more than ample notice of when that would be and defendant provided accommodations that were adequate and timely.

No other point is raised. It follows that the seller defaulted on its contract and defendant became entitled to the sum deposited as a guarantee of performance. This being a nonjury case, we render the judgment that should have been given by the trial court.

The judgment should be reversed on the law and the facts and judgment entered directing the Clerk to turn over to appellant Cukobirlek the sum of $6,948.15, the amount deposited with him by defendant and interpleading plaintiff First National City Bank of New York, with costs to appellant against plaintiff Milton Pilalas & Co.

BOTEIN, P. J., BREITEL, STEVENS and BASTOW, JJ., concur.

Judgment unanimously reversed on the law and on the facts and judgment entered directing the Clerk to turn over to appellant Cukobirlek the sum of $6,948.15, the amount deposited with him by defendant and interpleading plaintiff First National City Bank of New York, with costs to appellant against plaintiff Milton Pilalas & Co. Settle order on notice.